IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Gerald and Lora Williams as Personal Representatives of the Estate of Kendall Williams, | ) Civil Action No.: 4:13-1667-MGL<br>)<br>)<br>) |
| Plaintiffs, | ) **OPINION AND ORDER**<br>) |
| v. | )<br>) |
| Preiss-Wal Pat III, LLC d/b/a University Village at the Coast f/k/a Chanticleer Village, and Joe Woo, | )<br>)<br>)<br>) |
| Defendants. | ) |

Before this Court is Defendant Preiss-Wal Pat III, LLC's ("Defendant") Motion to Dismiss Plaintiffs' Amended Complaint brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 19.) Having considered the motion (ECF No. 19) and responses filed (ECF Nos. 20 & 22), the record, and the applicable law, the court GRANTS Defendant's Motion to Dismiss for the reasons set forth below.

**FACTUAL AND PROCEDURAL BACKGROUND**

This matter was removed from the Court of Common Pleas, County of Horry, South Carolina on June 18, 2013, by Defendant pursuant to 28 U.S.C. §§ 1441(a) and 1332 on the basis that this Court has jurisdiction based on the diversity of citizenship. (ECF No. 1.) Plaintiffs did not contest the removal. (ECF No. 13 at 2.) In their wrongful death complaint, Plaintiffs Gerald and Lora Williams as Personal Representatives of the Estate of Kendall Williams ("Plaintiffs") assert several state law causes of action against Defendant and Joe Woo ("Defendant Woo") relating to an incident that occurred at an apartment complex and resulted in the death of Plaintiffs' decedent. On July 16, 2013, Defendant moved to dismiss claiming that Plaintiffs' complaint failed to state a claim upon

which relief can be granted.  (ECF No. 7.)  Plaintiffs opposed the motion but stated their consent to a dismissal of their negligent supervision, negligent retention, and spoliation causes of action.  (ECF No. 13.)  In an order dated October 11, 2013, this Court dismissed these claims and granted Plaintiffs leave to amend their complaint to assert factual allegations, which, taken as true, state a plausible claim for relief.  (ECF No. 16.)  Plaintiffs amended their complaint on October 25, 2013 (ECF No. 18), and Defendant then filed the instant motion to dismiss.  (ECF No. 19.)

## STANDARD OF REVIEW

Defendant moves to dismiss this case under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the basis that Plaintiffs' remaining claims as they are asserted in the amended complaint fail to state a claim upon which relief can be granted.  (ECF No. 19.)  "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999).  To survive a motion to dismiss, the Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).

Although Rule 8(a) does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555.  In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  (quoting *Twombly*, 550 U.S. at 556).  A complaint alleging facts that are "'merely consistent with' a defendant's liability . . . 'stops short of

the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a plaintiff's well-pled allegations are taken as true, and the complaint and all reasonable inferences are liberally construed in the plaintiff's favor. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993). The court may consider only the facts alleged in the complaint, which may include any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the court must accept the plaintiff's factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pled with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. In sum, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555.

## **DISCUSSION**

Because this matter is before the Court on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court assumes the truth of the facts as alleged in Plaintiffs' complaint. *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 249 (2009). Plaintiffs, as personal representatives of the Estate of Kendall Williams, bring this action against Defendants Preiss-Wal Pat III, LLC d/b/a University Village at the Coast ("University Village") f/k/a Chanticleer Village and Joe Woo. Plaintiffs maintain that on April 10, 2011, Kendall Williams was an invitee of University Village where his cousin was a resident. (ECF No. 18 at 2.) Plaintiffs allege that Defendants market themselves as one of the best places students can live and represent to students

and parents that the company employs well-trained staff. (ECF No. 18 at 2-3.) Plaintiffs also allege that Defendants were aware that University Village was actually a dangerous place to live and knew that residents often complained about the complex on public websites. (ECF No. 18 at 3-5.) Plaintiffs further contend that Defendants were on notice that the employees at University Village were not properly trained or capable of providing a safe atmosphere to the public and that Defendants had a duty to inform the public of the "actual operations and atmosphere of University Village." (ECF No. 6.) Plaintiffs maintain that Kendall Williams suffered injuries, including his ultimate death, as a result of Defendants' acts and omissions. (ECF No. 18 at 7.) Plaintiffs state that on April 10, 2011, Kendall Williams was attacked and beaten to death by a 21-year old young man while he was visiting the University Village apartment complex. (ECF No. 18 at 5.)

Plaintiffs assert causes of action for negligence, maintaining *inter alia*, that Defendants owed a duty not to create or allow dangerous conditions on the property (ECF No. 18 at 8); negligent misrepresentation, in that Defendants owed a duty to protect the public and invitees from injury and falsely represented that the premises were safe (ECF No. 18 at 9); negligent hiring, maintaining that Defendants had a duty to hire professionals and experts (ECF No. 18 at 11); for violation of the South Carolina Unfair Trade Practices Act in making representations about the safety of the premises (ECF No. 18 at 12-13). Plaintiffs also maintain a claim for survivorship and wrongful death. (ECF No. 18 at 13-14.)

### Fraudulent Joinder

Before addressing the substance and merits of Defendant's motion to dismiss, the Court considers whether Defendant Joe Woo was fraudulently joined as a defendant in this matter such that the claims against him should be dismissed. The complaint and amended complaint make no

allegations concerning Defendant Woo other than an initial jurisdictional allegation which states that Defendant Woo is a resident and citizen of South Carolina like Plaintiffs. (ECF No. 1-1 at 2 & ECF No. 18 at 1.) Plaintiffs' allegation was challenged by Defendant in the removal papers. (ECF No. 1.) Specifically, Defendant contends that Defendant Woo was fraudulently joined to the suit in order to defeat federal diversity jurisdiction. Defendant attached an affidavit of Defendant Woo which indicates that Defendant Woo is in fact a citizen and resident of Wake County, North Carolina, and is therefore a diverse defendant. (ECF No. 1-2.) Plaintiffs did not file a motion to remand or otherwise raise any challenge to the allegation that Defendant Woo was fraudulently joined.[1] However, the Court has an independent duty to ensure that subject matter jurisdiction exists. *See* 28 U.S.C. § 1447; *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998).

Pursuant to 28 U.S.C. § 1332, which authorizes diversity jurisdiction, "complete diversity" of citizenship must exist between the parties, meaning that no party on one side may be a citizen of the same state as any party on the other side. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 554–55 (2005). Here, Plaintiffs contend that they are residents and citizens of South Carolina, that Defendant Preiss-Wal Pat is a corporation organized and existing under the state of North Carolina, and that Defendant Woo is a resident and citizen of South Carolina. (ECF No. 1-1 at 2 & ECF No. 18 at 1.) Thus, it would seem—based on a review of the face of Plaintiffs' complaint—that complete diversity is lacking because Plaintiffs allege that one defendant is of the same citizenship as Plaintiffs.

The doctrine of fraudulent joinder becomes relevant here to determine the appropriateness

---

[1] Interestingly, Plaintiffs indicate in their memorandum in opposition to Defendant's initial motion to dismiss that "the Defendants themselves are also from Raleigh, North Carolina." (ECF No. 13 at 2.)

of removal and to consider the contention that there is no colorable claim of relief against Defendant Woo who was named in an effort to try to defeat jurisdiction—"[t]his doctrine effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir.1999). "In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir.1993) (internal citation and quotation marks omitted). The burden on the defendant claiming fraudulent joinder is a heavy one in that "the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." *Id.* at 232-233. The Fourth Circuit has held that "[t]his standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir.1999).

Despite this high standard, the Court concludes that Defendant Woo was fraudulently joined and should be dismissed from this action. First, it is not entirely clear that Plaintiffs are actively pursuing a claim against Defendant Woo. In conjunction with its Notice of Removal, Defendant filed a declaration of Defendant Woo which maintains that Defendant Woo is currently a resident of North Carolina and has never been a resident or citizen of South Carolina as Plaintiffs allege. (ECF No. 1-2.) Plaintiffs never responded to the statements made by Defendant Woo in his affidavit and failed to rebut any of the arguments and evidence Defendants presented concerning jurisdiction

and the allegations of fraudulent joinder. Based on Defendant Woo's declaration which was not challenged by Plaintiffs, it seems that Plaintiffs made a misstatement of jurisdictional facts as it relates to Defendant Woo. Defendants, however, have not gone so far as to claim that Plaintiffs committed actual or outright fraud in pleading the citizenship of Defendant Woo. Instead, Defendants argue that even if Defendant Woo had not been fraudulently joined and had been properly served, the amended complaint lacks allegations establishing any causes of action against Defendant Woo. Thus, without any indication that Plaintiffs purposefully or intentionally included the wrong defendants in its complaint or misrepresented the true citizenship of Defendant Woo, "outright fraud in the plaintiff's pleading of jurisdictional facts" is not a basis for proving fraudulent joinder in this case.[2]

But, the amended complaint is almost completely devoid of substantive allegations against Defendant Woo. The complaint includes Defendant Woo in the caption and lists him as a party defendant and resident of Horry County, South Carolina. (ECF No. 18.) There is no other specific mention of Defendant Woo in the complaint and no allegations concerning him or his conduct. Instead Plaintiffs present their allegations in terms of "the Defendants" more generally. The single statement—"upon information and belief, Defendant Joe Woo is a citizen and resident of Horry County, South Carolina"—is insufficient to establish a colorable claim against Defendant Woo. Plaintiffs' conclusory allegations concerning "the Defendants" and their liability do not provide sufficient facts to state a claim against Defendant Woo. Additionally, Plaintiffs have not provided any facts to even dispute the claim of fraudulent joinder. Based on the pleadings, there is no

---

[2]*See, e.g., Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 n. 9 (7th Cir. 2009) ("Actual fraud in alleging jurisdictional fact will suffice to invoke the doctrine, but the more typical ground is that a plaintiff brought a claim against a nondiverse defendant 'that simply has no chance of success, whatever the plaintiff's motive.'")

possibility that Plaintiffs could establish a cause of action against Defendant Woo. *See Hartley*, 187 F.3d at 424; *Brown v. Allstate Ins. Co.*, 17 F.Supp.2d 1134, 1137 (S.D.Cal.1998) (concluding that defendants were fraudulently joined where there were no material allegations made against them). Accordingly, because Plaintiffs' amended complaint fails to state a colorable claim against Defendant Woo, the Court concludes that Defendant should be dismissed from the action and that subject matter jurisdiction based on diversity exists.

Negligence and South Carolina Unfair Trade Practice Claims

Plaintiffs' claims sounding in negligence may only go forward if Defendants owed a legal duty to the decedent. In order to establish a claim for negligence, a plaintiff must prove the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by negligent act or omission; and (3) damage proximately caused by the breach. *Huggins v. Citibank, N.A.*, 585 S.E.2d 275, 276 (S.C. 2003) An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. *Id.* at 276-277. Specifically, the parties must have "a relationship recognized by law as providing the foundation for a duty to prevent an injury." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 644 S.E.2d 43, 46 (S.C. 2007). "An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance." *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 714 (S.C. 2003). It is the relationship between the parties, not the potential "foreseeability of injury," that determines whether the law will recognize a duty in a given context. *Charleston Dry Cleaners & Laundry, Inc. v. Zurich American Ins. Co.*,586 S.E.2d 586, 588 (S.C. 2003). This ensures that the concept of duty in tort liability is not extended beyond reasonable limits. *South Carolina State Ports Auth. v. Booz-Allen & Hamilton, Inc.*, 346 S.E.2d 324, 326

(S.C.1986). If there is no duty, the defendant is entitled to judgment as a matter of law. *Huggins*, 585 S.E.2d at 277.

Here, Plaintiffs contend that Plaintiffs' decedent, Kendall Williams, whom they classify as an "invitee," was brutally beaten to death by another youth during a fight which occurred at an address along Chanticleer Village Drive. (ECF No. 18 at 5.) Plaintiffs allege very generally that "Defendants need to and had a duty to inform the public of the actual operations and atmosphere of University Village," a duty to hire and properly train management and staff and provide security on the premises, a duty to prevent crimes from occurring on the premises, and a duty to protect the public and invitees from being injured by negligent conduct. (ECF No. 18.) But Plaintiffs' position runs contrary to the established law. Under South Carolina law there is "no general duty to control the conduct of another or to warn a third person or potential victim of danger." *Doe v. Marion*, 605 S.E.2d 556, 560 (S.C.Ct. App.2004). By alleging that Plaintiffs' decedent "was an invitee at University Village, where his cousin was a resident," Plaintiffs look to invoke an exception to this general rule, i.e., where the defendant has a special relationship to the victim. *See id.*; *Courtney v. Remler*, 566 F. Supp. 1225, 1232 (D.S.C. 1983). But even this exception would not create such a duty applicable in this case because under South Carolina law, a landlord does not even owe a special "duty to a tenant to provide security in and around a leased premises to protect the tenant from criminal activity of third parties." *Cramer v. Balcor Property Mgmt., Inc.*, 441 S.E.2d 317, 319 (S.C. 1994); *Cramer v. Balcor Property Mgmt., Inc.*, 848 F. Supp. 1222 (D.S.C. 1994) (granting summary judgment in a wrongful death action brought by a personal representative of deceased tenant murdered in her apartment by unknown assailant). A guest of a resident or tenant is actually owed an even lesser duty under the law, even if that person is injured in the common area of an

apartment complex.³ *See Vogt v. Murraywood Swim & Racquet Club*, 593 S.E.2d 617, 619-620 (S.C. Ct. App. 2004); *Goode v. St. Stephens United Methodist Church*, 494 S.E.2d 827, 832 (S.C. Ct. App. 1997)(affirming trial court's conclusion that apartment complex owner and manager had no duty to protect a visitor to the apartment complex from the criminal acts of third parties in case where plaintiff was attacked on the grounds of the apartment complex and concluding that "it would be absurd to find a landlord owes a higher duty of care to the guests of tenants than to the tenants themselves.")

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," "mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Likewise, a complaint merely tendering

---

³ As stated by the South Carolina Court of Appeals:

> A licensee is a social guest or a person who is privileged to enter upon land by virtue of the possessor's consent. A licensee's presence on the property is for the primary benefit of the licensee, not the owner. On the other hand, an invitee is a person who enters onto the property of another at the express or implied invitation of the property owner. A public invitee is one who is invited to enter or remain on the land as a member of the public for a purpose for which the land is held open to the public. A business visitor is an invitee whose purpose for being on the property is directly or indirectly connected with business dealings with the owner.

*Goode v. St. Stephens United Methodist Church*, 494 S.E.2d 827, 831 (S.C. Ct. App. 1997)(internal citations and quotation marks omitted). In *Goode*, the South Carolina Court of Appeals held that the plaintiff who was attacked and beaten on the grounds of an apartment complex was not a "public invitee because an apartment complex is not a place held open to the public and is instead a private place for only people who are specifically invited." *Id.* Similarly, the court concluded that the plaintiff was not a "business invitee because he was not at the complex for a reason directly or indirectly connected with business dealings of the owner" or as a prospective tenant. *Id.* Instead, the court found that Plaintiff was "simply a guest of a tenant at the complex, and was no more than a licensee." *Id.* Here, Plaintiffs' decedent was similarly positioned as a licensee. (ECF No. 20 at 2-3.) Yet the Court need not reach a conclusion as to Plaintiffs' decedent's status and the Court has not concerned itself with the parties' recitation of the facts in evaluating the "four corners of the pleadings." (ECF No. 20 at 2.)

"naked assertions" without "further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). In this case, the amended complaint just generally alleges various duties that Defendants owe—presumably to the public—to maintain safe premises, to hire certain employees, and to communicate information to the public concerning the apartment complex. But "[a]n apartment complex is not a place of public resort where one who profits from the very public it invites must bear what losses that public may create. It is of its nature private and only for those specifically invited. The criminal can be expected anywhere, any time, and has been a risk of life for a long time." *Cooke v. Allstate Mgmt. Corp.*, 741 F.Supp. 1205, 1213 (D.S.C.1990). The amended complaint does not contain any factual allegations from which the Court could reasonably infer that Defendant owed Plaintiffs' decedent a duty of care, such that Defendant could be liable to Plaintiffs. Plaintiffs have not clearly identified the source and nature of any duty, i.e., statutory or contractual relationship, Defendant might have owed to Plaintiffs' decedent. At most, Plaintiffs have only invoked South Carolina common law as a source from which to draw a duty by incorporating the phrase "invitee" but they have done no more. *See DeCecco v. University of South Carolina*, 918 F. Supp. 2d 471, 501 (D.S.C. 2013). Further, reciting Defendant's marketing efforts and highlighting complaints that may have been received by Defendant regarding the premises does not create a duty owed to Plaintiffs' decedent. Thus, Plaintiffs have failed to plead a plausible claim for negligence because they have failed to allege sufficient facts from which a court could reasonably infer that Defendant owed Plaintiffs' decedent a duty of care. Plaintiffs' claims for wrongful death and survivorship are also subject to dismissal as they are based on the alleged negligence of Defendant.

Similarly, Plaintiffs' claims for negligent misrepresentation also fails. To state a claim for

negligent misrepresentation, a plaintiff must show that: "(1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to communicate truthful information to the plaintiff; (4) the defendant breached that duty; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as a result of such reliance." *Schnellmann v. Roettger*, 627 S.E.2d 742, 744 (S.C. Ct. App.2006). "To state a claim for negligent misrepresentation in South Carolina, a plaintiff must allege that the defendant owed a duty of care to communicate truthful information to *that* plaintiff." *Pitten v. Jacobs*, 903 F.Supp. 937, 951 (D.S.C. 1995) (emphasis added) (granting defendants' motions to dismiss and finding that plaintiffs had not alleged cognizable state law claims). Accordingly, South Carolina courts have invoked the principle of limiting "liability to a defined class of individuals with a particular nexus" and have acknowledged a duty may arise only where there is a specific individual or definable group that can be expected, before the fact, to rely on a particular statement. *Id.* (Citing *Carolina State Ports Authority v. Booz–Allen & Hamilton, Inc.*, 346 S.E.2d 324 (S.C. 1986)). Here, Plaintiffs' negligent misrepresentation claim falls woefully short, merely offering "labels and conclusions, and a formulaic recitation of the elements of [the] cause of action." *See Twombly*, 550 U.S. at 555. Plaintiffs' amended complaint fails to identify the source and nature of any duty of care owed by Defendant to Plaintiffs' decedent to communicate truthful information, and further fails to offer any factual support for their contention that Defendant made false representations to Plaintiffs' decedent who is not alleged to be a resident or a prospective resident of University Village. As it reads, the allegations in Plaintiffs' amended complaint along with the broad assertion of negligent misrepresentation, is insufficient to nudge Plaintiffs' claims "across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570. Accordingly,

Plaintiffs' claim for negligent misrepresentation fails.[4]

Plaintiffs also fail to state a claim for negligent hiring. "In circumstances where an employer knew of or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring . . . the employee . . . ." *See Kase v. Ebert*, 707 S.E.2d 456, 459 (S.C. Ct. App. 2011) (citing *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 330 (S.C.2008)). Negligent hiring cases "generally turn on two fundamental elements-knowledge of the employer and foreseeability of harm to third parties." *Kase*, 707 S.E.2d at 459 (internal citation and quotation marks omitted). The issue of an employer's knowledge concerns the employer's awareness that the employment of a specific individual created a risk of harm to the public. *Id.* The cause of action also necessarily contemplates that the negligently hired employee actually harmed Plaintiff. *Id.* Plaintiffs' amended complaint lacks any reference to any specific employee(s) who harmed Plaintiffs' decedent or who were negligent and instead generally references an unprofessional and poorly trained staff who should have been replaced in Plaintiffs' view. (ECF No. 18 at 11.) Accordingly, Plaintiffs have failed to plead facts sufficient to state a plausible claim of negligent hiring. The cause of action must be dismissed.

Finally, Plaintiffs fail to state a cause of action under the South Carolina Unfair Trade Practices Act ("SCUTPA"). SCUTPA prohibits "unfair methods of competition and unfair or

---

[4] Further, South Carolina courts have generally recognized the tort of negligent misrepresentation in commercial cases involving the inducement of a plaintiff to enter a contract or business transaction. *See Gilliland v. Elmwood Properties*, 391 S.E.2d 577, 580 (S.C.1990) (noting that the general elements of negligent misrepresentation "have been applied, in every case this Court has located, to support the recognition of a negligent misrepresentation claim where the misrepresented fact(s) induced the plaintiff to enter a contract or business transaction"); *Armstrong v. Collins*, 366 S.C. 204, 621 S.E.2d 368, 376 (S.C. Ct. App. 2005) ("A claim for negligent misrepresentation may be made when the misrepresented facts induced the plaintiff to enter a contract or business transaction.") This Court need not decide this issue to resolve this case.

deceptive acts or practices in the conduct of any trade or commerce." S.C.Code Ann. § 39–5–20(a). In order to establish a SCUTPA violation, a plaintiff must demonstrate "(1) that the defendant has engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Havird Oil v. Marathon Oil Co., Inc*., 149 F.3d 283, 291 (4th Cir.1998). Plaintiffs allege in a conclusory manner that Defendant marketed University Village in a way that was deceptive and unfair. (ECF No. 18 at 12-13.) Plaintiffs fail to allege that the loss Plaintiffs' decedent suffered came as a result of Defendant's deceptive advertising practices. Plaintiffs also fail to plead sufficient facts to establish that the alleged unlawful trade practice had an adverse impact on the public interest. But Plaintiffs' SCUTPA claim suffers from a greater problem which necessitates dismissal at this juncture. Plaintiffs bring their action, not on their own behalf but as representatives of the Estate of Kendall Williams. (ECF No. 18 at 1.) By statute, however, a SCUTPA claim cannot be brought in a representative capacity—SCUPTA prohibits the survival of a cause of action after a plaintiff's death. *See* S.C.Code Ann. § 39-5-140 ("Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages."); *Faircloth v. Jackie Fine Arts, Inc.*, 682 F. Supp. 837 (D.S.C. 1988), judgment aff'd in part, rev'd in part on other grounds, 938 F.2d 513 (4th Cir.1991)("[T]he statute precludes plaintiff from maintaining a SCUTPA action in her capacity as representative of Lynch's estate."); *Wogan v. Kunze*, 623 S.E.2d 107 (S.C. Ct. App. 2005), judgment affirmed as modified 666 S.E.2d 901 (patient's wife could not maintain a claim under

SCUTPA against physicians in an action brought in her representative capacity as the personal representative of her husband's estate). Plaintiffs' SCUTPA claim fails to state a claim upon which relief can be granted.

### Plaintiffs' Request to Amend Complaint

In their opposition to the motion to dismiss, in the event the Court does not deny the motion, Plaintiffs request yet another opportunity to amend their complaint to plead any deemed insufficiencies with more specificity. (ECF No. 20 at 19.) As another alternative, Plaintiffs request that the Court dismiss this case without prejudice so that Plaintiffs may refile. (ECF No. 20 at 19.) Ordinarily, "the court should freely give leave [to amend] when justice so requires" and the decision to grant or deny an opportunity to amend is within the discretion of the trial court. Fed.R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Defendants previously challenged Plaintiffs' complaint and this Court granted Plaintiffs leave to file an amended complaint to assert factual allegations which, taken as true, state a plausible claim for relief. The Court acknowledged Defendants' right to file a second motion to dismiss and this Court's right to revisit the issue of dismissal of this action pursuant to Rule 12(b)(6).

The Court notes that Plaintiffs have had sufficient time to formulate and reformulate their claims in the interim between the filing of the initial complaint and the amended complaint. The Court has seen no indication that further leave to amend will result in anything new in this case, and the request for further leave is denied. *See Raab v. General Physics Corp.*, 4 F.3d 286, 291 (4th Cir. 1993)(approving denial of request for leave to amend which would allow plaintiffs "a second chance to add scatter-shot allegations to their complaint"); *In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 391 (4th Cir. 2005) ("Leave to amend need not be given when amendment would be futile.").

## CONCLUSION

After examining the amended complaint, the Court finds it to be lacking sufficient allegations concerning Defendant's duty owed to Plaintiffs and that Plaintiffs have failed to plead sufficient facts to state a claim that is plausible on its face against Defendant. Accordingly, the Court GRANTS Defendant Preiss-Wal Pat III, LLC's Motion to Dismiss Plaintiffs' Amended Complaint for failure to state a claim. (ECF No. 19.) Plaintiffs' claims against both Defendants are dismissed without prejudice.

IT IS SO ORDERED.

/s/Mary G. Lewis
United States District Judge

Florence, South Carolina
April 29, 2014